UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
FRANCIS PAUL QUINN, JR. and LORI ANN
QUINN,

             Plaintiffs,

      - against -               **MEMORANDUM AND ORDER**
                               20 Civ. 2666 (NRB)

THE CITY OF NEW YORK and THE NEW YORK
CITY DEPARTMENT OF TRANSPORTATION,

             Defendants.
---------------------------------------X
THE CITY OF NEW YORK and THE NEW YORK CITY
DEPARTMENT OF TRANSPORTATION,

             Third-Party Plaintiffs,

      - against -

CONSOLIDATED EDISON, INC.,

             Third-Party Defendant.

---------------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


    This is the third and most recent case that plaintiff Francis Paul Quinn, Jr. ("Quinn") and his wife, plaintiff Lori Ann Quinn have brought arising out of Quinn's July 3, 2019 fall while crossing the intersection between West 53rd Street and Avenue of the Americas in Manhattan, New York.  The Quinns' first action, also in this Court, against Consolidated Edison Company of New York, Inc. ("ConEd") was settled for $2.5 million.  Next, the Quinns filed a case against defendants City of New York and the

New York City Department of Transportation (the "City defendants")
in New York Supreme Court, New York County.  The present action
was then brought against the City defendants.  Currently before
the Court is the City defendants' motion to dismiss pursuant to
Rule 12(b)(6) and the doctrine of judicial estoppel.  For the
following reasons, the City defendants' motion is granted.

I.   **Background**[1]

     A.  **The Accident**[2]

     Plaintiffs reside in Worcester, Massachusetts.  Compl. ¶¶ 1-
2.  As noted earlier, on July 3, 2019, while visiting New York,
plaintiff Francis Quinn, Jr. tripped and fell while crossing the
intersection between West 53rd Street and the south side of Avenue
of the Americas.  Compl. ¶ 23.  Quinn suffered injuries, including
injuries to his right shoulder, which have resulted in limited
mobility.  ECF No. 35-20 at 3-4.  Lori Ann Quinn claims that she

---

[1]     The history of this case is explained narratively below.  A timeline
depicting the key and indisputable facts is also appended to this Memorandum
and Order.

[2]     The following background is principally drawn from the operative
complaint, ECF No. 3 ("Compl.").  For the purposes of the Court's ruling on the
instant motion, the Court draws all reasonable inferences in plaintiff's favor.
See Koch v. Christie's Int'l PLC, 699 F.3d 141, 145 (2d Cir. 2012).  Given the
sparsity of the pleading, the Court also draws on the documents that the parties
have submitted, which plaintiffs relied on in framing the complaint, and
documents of which the Court may take judicial notice.  In re Merrill Lynch &
Co., Inc., 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (holding that among the
materials that a court may consider in deciding a Rule 12(b)(6) motion are:
"(1) facts alleged in the complaint and documents attached to it or incorporated
in it by reference, (2) documents 'integral' to the complaint and relied upon
in it, even if not attached or incorporated by reference" and (3) "facts of
which judicial notice may properly be taken under Rule 201 of the Federal Rules
of Evidence."), aff'd sub nom. Lentell v. Merrill Lynch & Co., 396 F.3d 161 (2d
Cir. 2005).

suffered a loss of the "services, society, comfort, companionship, and consortium of her husband" due to this accident.  Compl. ¶ 47.

### B. Procedural History

We begin by reviewing the history of plaintiffs' multiple lawsuits, all seeking to recover damages for the same accident.

First, on July 15, 2019, the plaintiffs sued ConEd in this District.  <u>Quinn, Jr. et al. v. Consolidated Edison Company of New York, Inc.</u>, No. 19 Civ. 6538 (LJL) (SJA) (2019) (the "ConEd Action").[3]  In that lawsuit, the Quinns claimed that Quinn's fall was caused when his foot caught up against a ConEd gas cap.  ConEd Action, ECF No. 1 ¶ 17 (claiming Quinn was at the "gas utility box within the crosswalk of the South side of 6th Ave . . . when he was caused to fall due its defective and hazardous condition within the crosswalk.").  Two months later, on September 24, 2019, the Quinns filed a Notice of Claim against the City defendants.  ECF No. 35-3. At his December 11, 2019 deposition in the ConEd Action, Quinn testified:

> Q: Did your foot get stuck somewhere?
> A: It went into that hole and twisted when I was in that hole up against that raised gas cap.

---

[3]    The Court takes judicial notice of the filings in this case.  Courts may take judicial notice of matters of public record, such as court filings, "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." <u>Glob. Network Commc'ns, Inc. v. City of New York</u>, 458 F.3d 150, 157 (2d Cir. 2006) (internal quotation marks and citations omitted).

ECF No. 35-9 at 41:2-6.  On February 6, 2020, plaintiffs and ConEd attended a settlement mediation before Magistrate Judge Aaron. See ConEd Action, ECF No. 43 at 1; ECF No. 35-15 ¶ 3.  In advance of that mediation, the parties submitted extensive materials, including expert reports, presentations, and memoranda.  ECF Nos. 35-12-35-15; 39-1; 39-10.  At the mediation, Magistrate Judge Aaron proposed that the parties settle the case for $2,499,000 (the "mediation proposal").  ConEd Action, ECF No. 43 at 1; ECF No. 39-17 at 1.  The parties later accepted the mediation proposal.  Id. As part of the settlement, plaintiffs released ConEd from all claims "in any way arising out of an incident or relating to an incident on July 3, 2019."  ECF No. 39-17 at 2.  The ConEd Action was dismissed on February 20, 2020.  ConEd Action, ECF No. 42.

Approximately a month later, on March 21, 2020, the Quinns commenced a new lawsuit against the City defendants in New York Supreme Court seeking recovery for the same accident.  ECF No. 35-24 at 1.  Plaintiffs voluntarily discontinued that case without prejudice a month later on April 20, 2020.  ECF No. 39-16.

Plaintiffs returned to this Court to file their third complaint on March 31, 2020, again seeking damages for the same accident.  ECF No. 3.  In this complaint, plaintiffs allege that Quinn fell "due to the defective and hazardous conditions" of a crosswalk which the City of New York "caused and created" through its "negligence in the ownership, operation, management,

supervision, maintenance, and control of the aforesaid crosswalk."
Compl. ¶¶ 23, 26-27; see also ECF No. 39 ¶ 33 ("Plaintiffs' claim
is against the City for their active negligence regarding the
pothole in their crosswalk . . . ."). In the Civil Cover Sheet
plaintiff filed when opening this case, plaintiffs responded "No"
to a question asking whether "this action, case, or proceeding, or
one essentially the same been previously filed in the SDNY at any
time." ECF No. 2 at 1. Thereafter, on November 18, 2020, the
City defendants filed a third-party complaint against ConEd,
alleging that if the trier of fact finds a defect with respect to
the maintenance of the area within twelve inches of the ConEd gas
cap at issue, ConEd would be liable for contribution and
indemnification as the entity responsible for that area. ECF No.
21. On March 19, 2021, the City defendants filed a premotion
letter to discuss their anticipated motion to dismiss, to which
plaintiffs replied on March 23, 2021. ECF Nos. 28; 31. The Court
held a conference on April 13, 2021, during which the Court gave
the City defendants permission to bring their motion to dismiss
and extended ConEd's time to respond to the complaint until after
the City defendant's motion to dismiss was decided. ECF No. 32 at
12:5-6, 17:17-23. Thereafter, defendants filed their motion on
May 10, 2021. ECF No. 35-37. In response, plaintiffs submitted
both an opposition brief and a "certification" from plaintiff's
counsel, which contained both factual and legal arguments. ECF

Nos. 38; 39.[4]   The motions were fully briefed as of June 21, 2021.
ECF No. 41.   Thereafter, on June 25, 2021, plaintiffs submitted a
"supplemental certification" further responding to the City's
reply brief and arguing that the City defendants' third-party
complaint should be dismissed.   ECF No. 42.

## II.  Discussion

### A.  Judicial Estoppel Analysis

Defendants' motion to dismiss is fundamentally predicated on
the doctrine of judicial estoppel.   The doctrine of judicial
estoppel provides that "[w]here a party assumes a certain position
in a legal proceeding, and succeeds in maintaining that position,
he may not thereafter, simply because his interests have changed,
assume a contrary position, especially if it be to the prejudice
of the party who has acquiesced in the position formerly taken by
him."   New Hampshire v. Maine, 532 U.S. 742, 749 (2001).   Judicial
estoppel is a doctrine designed to "protect the integrity of the
judicial process by prohibiting parties from deliberately changing
positions according to the exigencies of the moment."   Id. at 750
(internal citations and quotation marks omitted).   An issue of

---

[4]     The Court notes that the motion papers (in particular plaintiffs'
opposition memorandum and "certification" and defendants' reply
"certification") lack the format and quality expected from litigants before
this Court, to such a degree that the Court was tempted to strike the papers.
Should the parties litigate before this Court again, the Court expects the
parties to comply with all federal and local rules.   Specifically, the Court
reminds the parties that Local Rule 7.1 provides that the parties shall submit
memoranda of law and factual affidavits – rather "certifications" containing
legal arguments, as occurred here.

judicial estoppel may be resolved on a motion to dismiss. Evercrete Corp. v. H-Cap Ltd., 429 F. Supp. 2d 612, 620 (S.D.N.Y. 2006) ("A party may raise a defense of res judicata, collateral estoppel, or judicial estoppel on a motion to dismiss pursuant to Rule 12(b)(6) where the basis for that defense is set forth on the face of the complaint or established by public record.").

Under Second Circuit law, a court should consider the following factors in determining whether a party is judicially estopped from bringing a claim:

> **First**, a party's later position must be clearly inconsistent with its earlier position. **Second**, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled . . . . A **third** consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel.

Adelphia Recovery Trust v. Goldman Sachs & Co., 748 F.3d 110, 116 (2d Cir. 2014) (quoting New Hampshire, 532 U.S. at 750) (emphasis added). Each of these factors is satisfied here.

### 1.  Clear Inconsistency

Plaintiffs' claims in the two lawsuits are clearly inconsistent.  In the ConEd Action, Quinn claimed that he tripped on a gas cap owned by ConEd.  See ConEd Action, ECF No. 1 ¶ 17

(claiming Quinn was at the "gas utility box within the crosswalk of the South side of 6th Ave . . . when he was caused to fall due its defective and hazardous condition within the crosswalk."); ECF No. 35-12 at 41:2-6 ("Q: Did your foot get stuck somewhere? A: It went into that hole and twisted when I was in that hole up against that raised gas cap.").  In the instant suit, Quinn claims that he tripped in a pothole in the crosswalk, and that the pothole, not the gas cap, caused his fall.  Compl. ¶ 23; ECF No. 39 ¶ 33 ("Plaintiffs' claim is against the City for their active negligence regarding the pothole in their crosswalk . . . .").  Moreover, in his prior suit, plaintiffs' expert claimed that the defect that caused Quinn's fall was due to ConEd's "improper and inadequate initial installation [or repair] of the cover" and "was not the result of wear and tear or a maintenance issue."  ECF No. 35-10 at 5-6.  Here, plaintiffs claim it was the City defendants' negligence in, <u>inter alia</u>, the "maintenance and control" of the crosswalk that caused the hazard over which Quinn tripped.  Compl. ¶ 27.

Apart from the obvious physics challenge presented by claiming to be in two different places at one time, the factual inconsistency in plaintiffs' claims is highly consequential as a matter of law.  The Rules of City of New York Department of Transportation (34 RCNY) § 2-07(b) provide that "owners of covers or gratings on a street are responsible for monitoring the condition of the covers and gratings and the area extending 12

inches outward from the perimeter of the hardware, and for ensuring that the hardware is flush with the surrounding street surface." Fontanazza v. Cent. Parking Sys. of New York, Inc., 37 Misc. 3d 138(A), at *2 (1st Dep't Nov. 28, 2012).   Under this rule, the owner of the grating (or gas cap) has "exclusive maintenance responsibility over the grate and the area extending 12 inches outward from the perimeter of the grate."   Lewis v. City of New York, 89 A.D.3d 410, 411 (1st Dep't 2011) (emphasis added).   For example, in Fontanazza, the plaintiff tripped over a ConEd gas cap and injured himself.   Fontanazza, 37 Misc. 3d 138(A), at *1.   In granting summary judgment to the abutting property owner, the Court reasoned that, as a matter of law, according to 34 RCNY § 2-07(b), "the responsibility for maintaining the condition of the area where plaintiff fell lies with Con Edison, rather than defendant."   Id. at *2.

Thus, if Quinn tripped on the gas cap or a hazardous condition within twelve inches of the gas cap, only ConEd would be liable. Conversely, if Quinn tripped over a hazardous condition caused by the City defendants more than twelve inches from ConEd's gas cap, ConEd would not be liable for injuries resulting from the fall. Having placed his foot within the twelve-inch perimeter of the gas cap in order to hold ConEd liable in the ConEd Action, Quinn cannot now relocate his foot in order to seek additional damages against

the City defendants.    Clearly, plaintiffs have advanced inconsistent theories of liability in their successive suits.

Moreover, plaintiffs' decision to file two separate lawsuits reveals that plaintiffs appreciated the mutual exclusivity of these theories of recovery.  If plaintiffs truly believed that both ConEd and the City could be liable for Quinn's fall over the gas cap, fundamental good lawyering would dictate joining all defendants in a single suit.  This strategy serves the obvious purpose of maximizing the available funds for any potential recovery.

Plaintiffs' counsel tries to explain his gamesmanship by stating that he could not sue the City defendants prior to his §50-h hearing.  ECF No. 39 ¶ 6.  This explanation has no support in the law.  See N.Y. Gen. Mun. Law §50-i (1) (the relevant prerequisites for a plaintiff to bring a tort lawsuit against the City are that: "(a) a notice of claim shall have been made and served . . .  (b) at least thirty days have elapsed since the service of such notice . . . and [c] that adjustment or payment thereof has been neglected or refused.").  Plaintiffs' Notice of Claim was filed on September 24, 2019, ECF No. 35-3, which meant that plaintiffs could have sued the City thirty days after that date (on or after, October 24, 2019, and in any event, substantially before the mediation before Magistrate Judge Aaron).

Nor is there any doubt that plaintiffs' counsel was well aware of his right to sue the City defendants prior to a 50-H hearing. Plaintiffs' complaint in this very case references the relevant law governing when the suit could be filed.  It states "[t]hat defendants have refused or neglected for more than thirty (30) days [following the Notice of Claim] and up to the commencement of this action to make any adjustment or payment thereof, and thereafter, and within the time provided by law, this action has been duly commenced." Compl. ¶ 8.  Most devastating is the fact that plaintiffs' counsel did not in fact wait until the 50-H hearing to file this lawsuit -- this lawsuit was filed on March 31, 2020, and plaintiffs' 50-H hearing was not held until April 23, 2020.  See ECF No. 3; ECF No. 35-19.  Plaintiffs' counsel's decision to feign ignorance of law he previously relied on is inexcusable.[5]

---

[5]     Plaintiffs' counsel also implies in his certification that he was unaware that the City defendants could be liable until the mediation hearing before Magistrate Judge Aaron.  See ECF No. 39 ¶ 37 ("Our office was of the belief that the repair was made by Con Edison. However, we were told by Con Edison at the mediation on February 6, 2020 that the City made the repair.").  But plaintiffs had already filed a Notice of Claim with the City (albeit there, plaintiffs' counsel claimed that Quinn "was caused to trip and fall due to a defective and hazardous gas utility box" – not because of a pothole).  ECF No. 35-3 ¶ 3.  Either plaintiffs filed the Notice of Claim in bad faith, or plaintiffs believed they had a claim against the City.  If plaintiffs believed they had a claim, the claim should have been disclosed in the prior action.  In any event even if counsel learned something during the mediation which led him to believe that the City defendants, rather than ConEd, were responsible, nothing prevented counsel from adding the City defendants at that time.  Rather, plaintiffs' counsel made a deliberate decision to get a quick and substantial recovery from ConEd.

Because plaintiff has taken inconsistent positions in the two actions, the first element of the judicial estoppel analysis is met.

### 2.   Perception That the Court Has Been Misled

The second factor that must be considered when conducting a judicial estoppel analysis is whether a party "has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled . . . ." Adelphia, 748 F.3d at 116.

Plaintiffs have already "succeeded in persuading a court to accept [their] earlier position." Id.   In the ConEd Action, Magistrate Judge Aaron held a mediation hearing, in which the parties submitted extensive materials to develop the record, including factual affidavits, memoranda of law, and expert reports.   At the hearing, Magistrate Judge Aaron suggested a settlement of $2,499,000, which the parties subsequently accepted. ConEd Action, ECF No. 43.   Clearly, Magistrate Judge Aaron's mediation proposal that ConEd pay plaintiffs such a significant amount in exchange for a release of their claims demonstrates that he credited plaintiffs' allegations that Quinn tripped over the area within twelve inches of ConEd's gas cap.   Had Quinn not tripped over the gas cap or within twelve inches of the cap, ConEd would not be liable at all, let alone for nearly $2.5 million in

damages.   See supra, pp.8-9.   Therefore, in proposing the
settlement amount of nearly $2.5 million, the Court clearly
accepted plaintiffs' earlier position.

We note that in the typical case, settlement agreements are
not sufficient to form the basis for judicial estoppel.  See, e.g.,
Bates v. Long Island R. Co., 997 F.2d 1028, 1038 (2d Cir. 1993).
This is because, in the usual course, "settlement neither requires
nor implies any judicial endorsement of either party's claims or
theories, and thus a settlement does not provide the prior success
necessary for judicial estoppel."  Id.  However, in this case, the
settlement was not an out of court agreement, but rather, was
proposed by a judge after his consideration of an extensive record,
and reflected his views of the merits of the parties' arguments.
Thus, the circumstances present here reflect the Court's adoption
of a party's position for the purposes of judicial estoppel.  See
In re B & M Linens Corp., No. 12-11560 (ALG), 2013 WL 3579340, at
*7 (Bankr. S.D.N.Y. July 12, 2013) (finding that judicial estoppel
"has been applied in bankruptcy cases where judicial adoption of
a party's position is implicit in and necessary for the court's
approval of a settlement or similar compromise."); In re Venture
Mortg. Fund, L.P., 245 B.R. 460, 473 n. 17 (Bankr. S.D.N.Y. 2000)
(finding that "[t]here is some authority that a settlement approved
by a court may be a basis for judicial estoppel" and collecting
cases), aff'd, 282 F.3d 185 (2d Cir. 2002); see also Oklahoma

13

Firefighters Pension & Ret. Sys. v. Student Loan Corp., 951 F.
Supp. 2d 479, 493 n. 6 (S.D.N.Y. 2013) ("While our research has
not revealed the application of the doctrine of judicial estoppel
where the earlier action was resolved by judicially-approved
settlement award, it would appear that the criteria for the
doctrine's application are met in this case.").

Finally, given that the two theories of liability are mutually
exclusive and turn on different "facts," the acceptance of
plaintiffs' current position would produce the perception that
either Magistrate Judge Aaron or this Court has been misled.
Accordingly, the second factor of the judicial estoppel analysis
is met.

### 3. Unfair Advantage/Unfair Detriment

The third factor is whether "the party seeking to assert an
inconsistent position would derive an unfair advantage or impose
an unfair detriment on the opposing party if not estopped."
Adelphia, 748 F.3d at 116.

To allow plaintiffs to proceed with their lawsuit would
clearly provide unfair advantages to plaintiffs to the detriment
of the City defendants and ConEd.  Plaintiffs have already been
awarded a settlement that reflects a court's judgment regarding
the appropriate payment for their damages.  If this suit were to
continue and plaintiffs were to get a proverbial second bite at
the apple, plaintiffs could receive a windfall in excess of what

a court has deemed and plaintiffs accepted to be a fair recovery. This is an unfair advantage.

Moreover, had both ConEd and the City defendants been sued in the ConEd Action, any question of whether ConEd or the City defendants were liable for the fall could have been fully litigated and decided. Now, ConEd has paid $2.5 million to resolve plaintiffs' claims for Quinn's fall and to be released from any claims brought by the Quinns "in any way arising out of an incident or relating to an incident on July 3, 2019[,]" ECF No. 39-17 at 2, but still faces further costly litigation. Further, since the Quinns have released ConEd from any further liability as part of their settlement, the City defendants have been placed in the position of bringing a third-party suit against ConEd, which the Quinns oppose. Had the Quinns brought their lawsuit against both the ConEd and the City defendants, the Quinns, and not the City defendants, would be in the position of litigating against ConEd. These are unfair detriments.

Plaintiffs' effort to split a single cause of action into two successive lawsuits is contrary to the Federal Rules of Civil Procedure. First, the legal inconsistency between plaintiffs' claims against ConEd and the City defendants is fully accommodated by Rule 8(d)(3), which permits inconsistent claims. Second, Rule 19(a)(1) provides that a person who is subject to service of

process and whose joinder will not deprive the Court of subject-matter jurisdiction <u>must</u> be joined as a party if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19.  The sound policy reasons for Rule 19 are well-illustrated by the failure of plaintiffs here to comply with the Rule.  Rule 19 promotes the efficient and complete resolution of controversies before the courts, and prevents piecemeal litigation, such as the instant action, that could produce contradictory results.  <u>See</u> 4 Moore's Federal Practice - Civil § 19.02 (2021) ("These goals — efficiency, consistency, and avoidance of multiple liability — are likewise at the heart of the compulsory joinder rule.").  Plaintiffs' conduct, which resulted in a substantial recovery from a party, nonetheless subjected the same party and others to costly and repetitive litigation, let alone unnecessary and duplicative demands on this Court.

Further, there is no question that plaintiffs obtained their advantage unfairly.  Plaintiffs and their counsel have repeatedly

misled the parties and the Court by concealing from the Court, the defendants, and defendants' counsel, their strategy of filing two actions.  The most glaring example of this deliberate effort was plaintiffs' failure to acknowledge the prior ConEd Action in the Civil Cover Sheet completed upon the filing of this action, when they had just settled the ConEd Action a month earlier.  ECF No. 2 at 1.  Moreover, in Quinn's interrogatory response in the ConEd Action, Quinn replied to a question asking him to "[s]tate any action, lawsuit, notice of claim or legal proceeding, whether active, settled, or otherwise dismissed, in which Plaintiff is or was a party concerning any of the matters alleged in the Complaint" with "Not applicable."  ECF No. 35-6 ¶ 24.  Yet, plaintiffs had previously filed a Notice of Claim with the City of New York.  ECF No. 35-3.  Similarly, in their interrogatory response in this action, plaintiffs responded to a question asking them to list all prior lawsuits in which plaintiffs were a party by only listing the New York Supreme Court action, and conveniently omitting the ConEd Action.  ECF No. 35-20 ¶ 14.  Further, plaintiffs also denied in their interrogatory response in this case that they had previously given any testimony or statements regarding the subject matter of the action, other than Quinn's testimony in the 50-H hearing, despite that in the ConEd Action plaintiffs made numerous statements to the Court, answered interrogatories, and Quinn was deposed.  Id. ¶ 15; ECF Nos. 35-6; 35-9.  Plaintiffs themselves

swore to the accuracy of these interrogatory answers, despite having received a quarter of a million dollars in the ConEd settlement, and both sets of interrogatories were signed by counsel. ECF Nos. 35-6 at 1, 11; 35-20 at 1, 10. Moreover, in the ConEd Action, ConEd's counsel specifically asked plaintiffs' counsel at Quinn's deposition whether he had filed a 50-H claim. ECF No. 35-9 at 232:7-24. Plaintiffs' counsel informed ConEd that a Notice of Claim was filed "prophylactically just to make sure the City wasn't involved." Id. At no point did counsel disclose that at that time, Quinn was scheduled to attend a 50-H hearing at the end of February, see ECF No. 35-8, and was planning to bring a lawsuit against the City. Such conduct is unprofessional and unacceptable.

"In sum, judicial estoppel is designed to prevent a party who plays fast and loose with the courts from gaining unfair advantage through the deliberate adoption of inconsistent positions in successive suits." Ashmore v. CGI Grp., Inc., 923 F.3d 260, 272 (2d Cir. 2019) (citation and alteration omitted). Here, plaintiffs have done exactly that. They have adopted contradictory positions and concealed their strategy of successive lawsuits through false statements, with a goal of securing damages in excess of the $2.5 million that a court concluded was a just recovery for their loss. Therefore, the third element of the judicial estoppel analysis is met.

## IV.  <u>Conclusion</u>

For the foregoing reasons, the Court finds that plaintiffs' claim is barred by the doctrine of judicial estoppel and dismisses plaintiffs' complaint in its entirety with prejudice.[6]

The conclusion that a claim is barred by the doctrine of judicial estoppel is always serious as it is based on a determination that there has been an attempt to violate the integrity of the judicial process.  However, the undisputed facts here appear to raise additional issues of an ethical dimension: specifically whether Rule 11 of the Federal Rules of Civil Procedure or the New York Rules of Professional Conduct have been violated.  Those issues arise from failures to disclose and/or outright misrepresentations to this Court and to opposing counsel. In addition to the absence of a legal or factual basis for the current litigation assuming that the basis of the prior litigation was truthful, plaintiffs' counsel misrepresented to ConEd's lawyer the reason for filing a Notice of Claim with the City; failed to disclose the ConEd Action to this Court when he filed this action; falsely denied the fact of the ConEd Action and plaintiffs' testimony in that action in the interrogatory answers in this case; falsely denied the fact of the Notice of Claim in the interrogatory answers in the ConEd Action; and falsely tried to explain to this

---

[6]     Having found for the City defendants on the issue of judicial estoppel, the Court need not address defendants' argument that the New York City Department of Transportation is not a suable entity.

Court his failure to sue the City earlier.  Accordingly, pursuant to Rule 11(c)(3), plaintiffs' counsel is direct to show cause why the conduct described above is not violative of Rule 11(b) and/or, inter alia, Rules 3.3 and 8.4 of the New York Rules of Professional Conduct.  Counsel's submission should be filed no later than 30 days from the entry of this order.

The Court respectfully directs the Clerk to terminate the open motions.

**SO ORDERED.**

Dated:     New York, New York
           March 24, 2022

_____
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE



*Quinn et al. v. City of New York et al.*, 20cv2666

**July 3, 2019**

Francis Quinn, Jr. slips and falls while crossing between W 53rd St and 6th Ave.

**September 24, 2019**

Plaintiffs file Notice of Claim against City of New York

**July 15, 2019**

Plaintiffs file lawsuit against ConEd, 19cv6538 (LJL) (SDA)

**November 25, 2019**

F. Quinn files interrogatory responses in ConEd action, responding to a question about whether he had filed a Notice of Claim as "Not Applicable."

**November 29, 2019**

Deadline for joinder of parties in lawsuit against ConEd, 19cv6538 (LJL) (SDA)

**February 6, 2020**

Settlement conference held in lawsuit against ConEd, 19cv6538 (LJL) (SDA)

**December 11, 2019**

During F. Quinn's deposition, his attorney informs ConEd that a Notice of Claim was filed "prophylactically just to make sure the City wasn't involved." ECF No. 34-10 at 232:17-24.

**February 20, 2020**

Parties inform Court that they have reached a settlement and case against ConEd is closed.

**March 21, 2020**

Plaintiffs sue City of New York in New York Supreme Court.   The case is discontinued on April 20, 2020.

**February 24, 2020**

Parties confirm settlement before Judge Aaron

**February 20, 2020**

Plaintiffs are initially scheduled to appear for 50-H hearing.

**March 31, 2020**

Plaintiffs commence action against City of New York in federal court.

**April 23, 2020**

50-H hearing held

**November 18, 2020**

City files complaint adding ConEd as a third-party defendant.

**June 21, 2021**

Motion to Dismiss fully briefed.