UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
FRANCIS PAUL QUINN JR. and LORI
ANN QUINN,

          Plaintiffs,

      - against –

THE CITY OF NEW YORK and THE
NEW YORK CITY DEPARTMENT OF
TRANSPORTATION,

          Defendants.

------------------------------
THE CITY OF NEW YORK and THE
NEW YORK CITY DEPARTMENT OF
TRANSPORTATION,

     Third-Party Plaintiffs,

      - against –

CONSOLIDATED EDISON, INC.,

     Third-Party Defendant.

------------------------------X

**MEMORANDUM AND ORDER**
20 Civ. 2666 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    Francis Paul Quinn Jr. and Lori Ann Quinn ("plaintiffs") bring this action against the City of New York and the New York City Department of Transportation (together, the "City defendants"), seeking damages arising from an accident they allege was caused by the negligence of the City defendants.  ECF No. 3 ("Compl.") ¶¶ 15-49.  Presently before the Court is the City defendants' motion

for summary judgment pursuant to Federal Rule of Civil Procedure 56. ECF No. 84 ("Mot."). For the following reasons, the City defendants' motion is granted.

## BACKGROUND[1]

On July 3, 2019, plaintiff Francis Paul Quinn Jr. ("Quinn") tripped and fell while crossing the intersection of West 53rd Street and the south side of Sixth Avenue. Compl. ¶ 23. Quinn alleges that he suffered "severe and permanent injuries" as a result of this accident. Compl. ¶¶ 23, 40, 47. Quinn's wife, co-plaintiff Lori Ann Quinn ("Lori Ann"), claims it also resulted in the loss of the "services, society, comfort, companionship, and consortium of her husband[.]" Compl. ¶¶ 45-47.

Plaintiffs filed a series of suits following this accident. Less than two weeks after Quinn's fall, on July 15, 2019, plaintiffs sued Consolidated Edison ("ConEd") in this District, alleging that Quinn "was caused to fall" due to the "defective and hazardous condition" of a ConEd gas utility box within the crosswalk. Quinn v. Consolidated Edison Company of New York, Inc., No. 19 Civ. 6538 (LJL) (SDA) (S.D.N.Y. 2019) (the "ConEd Action"),

---

[1] Unless otherwise noted, the facts considered and recited for purposes of the instant motion for summary judgment are drawn from plaintiffs' complaint, Compl., the City defendants' Rule 56.1 statement, ECF No. 84-2, plaintiffs' Rule 56.1 response and counterstatement, ECF No. 87 at 1-6, and the prior action by plaintiffs in this Court, Quinn v. Consolidated Edison Company of New York, Inc., No. 19 Civ. 6538 (LJL) (SDA) (S.D.N.Y. 2019).

ECF No. 1 ¶ 17.  On September 24, 2019, while the ConEd Action was pending, plaintiffs served a notice of claim on the City defendants.  ECF No. 84-5.  On February 6, 2020, plaintiffs and ConEd attended a settlement mediation before Magistrate Judge Stewart D. Aaron, at which plaintiffs pursued their claim that ConEd was responsible for Quinn's accident.  See ConEd Action, ECF Nos. 36, 42.  Judge Aaron proposed that the parties settle for $2,499,000, and plaintiffs accepted this proposal.  See Quinn v. City of New York, No. 20 Civ. 2666 (NRB), 2022 WL 874852, at *5 (S.D.N.Y. Mar. 24, 2022).  The ConEd action was dismissed on February 20, 2020.  ConEd Action, ECF No. 42.

Approximately one month later, on March 31, 2020, plaintiffs commenced this action against the City defendants, seeking damages for the same accident.[2]  Plaintiffs' complaint in the instant action, filed on March 31, 2020, alleged that Quinn fell "due [to] the defective and hazardous conditions" of the crosswalk, which the City defendants "caused and created" through their "negligence . . . in the ownership, operation, management, supervision, maintenance, and control of the aforesaid crosswalk."  Compl. ¶¶ 23, 26-27.  On November 18, 2020, the City defendants filed a

---

[2] On March 21, 2020, before beginning this action, plaintiffs commenced a lawsuit against the City defendants in New York County Supreme Court.  Quinn v. City of New York, No. 153010/2020, NYSCEF Doc. No. 1; see also ECF No. 35-24 at 1. Plaintiffs voluntarily discontinued this lawsuit without prejudice on April 22, 2020.  ECF No. 39-16.

third-party complaint against ConEd seeking contribution and indemnification. ECF No. 21. At a conference on August 7, 2023, this Court stayed the time for ConEd to answer or move until the instant motion was decided. See ECF No. 76.

On May 10, 2021, the City defendants filed a motion to dismiss plaintiffs' complaint, arguing that, given the inconsistencies between plaintiffs' positions in the two lawsuits, the doctrine of judicial estoppel applied to bar plaintiffs from bringing this action against the City defendants. ECF Nos. 35-37. Specifically, the City defendants identified factual inconsistencies between plaintiffs' two lawsuits, noting that plaintiffs had previously adopted the position that ConEd was subject to liability but were now seeking to subject the City defendants to liability for the same incident. See ECF No. 37 at 9-15. In the City defendants' view, both versions of plaintiffs' story could not be true. Id. at 12. After reviewing the parties' briefing, this Court granted the City defendants' motion to dismiss, determining that judicial estoppel was appropriate. Quinn, 2022 WL 874852, at *7. Plaintiffs appealed this Court's Memorandum and Order on April 4, 2022. ECF No. 51. Without adopting either party's version of the underlying facts, the Second Circuit found that the doctrine of judicial estoppel did not apply in the context of the court's limited involvement in the settlement conference, and, on June 9,

2023, issued a summary order vacating this Court's judgment and remanding for further proceedings. <u>Quinn</u>, No. 22-709, 2023 WL 3909798, at *2-*3 (2d Cir. June 9, 2023) (summary order).

Following remand, the City defendants filed this motion on January 25, 2024, seeking summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the basis that they had not received prior written notice of the defect alleged to have caused Quinn's accident. ECF No. 84-4 at 7-20. As will be described in detail below, the City's moving papers included three affidavits from City employees and more than 400 pages of records, including reports, notices, permits, and repair orders pertaining to the location of the accident over a period of two years before it occurred. ECF Nos. 84-11-84-20. Plaintiffs submitted an opposition brief on February 28, 2024, ECF No. 85 ("Opp."), and the motion was fully briefed on March 15, 2024, ECF No. 88 ("Reply").

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Nick's Garage, Inc.</u>

v. Progressive Cas. Ins. Co., 875 F.3d 107, 113-14 (2d Cir. 2017) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  "[I]n assessing the record to determine whether there is a genuine issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

On a motion for summary judgment, "[t]he moving party bears the initial burden of demonstrating 'the absence of a genuine issue of material fact.'"  F.D.I.C. v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  Once the moving party satisfies this burden, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial'" to defeat the motion. Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . and may not rely on conclusory allegations or unsubstantiated speculation."  Brown v. Eli Lilly and Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal quotation marks and citations omitted).  "If no rational fact finder could find in the non-movant's favor, there is no genuine issue of material fact,

and summary judgment is appropriate." <u>Citizens Bank of Clearwater</u> <u>v. Hunt</u>, 927 F.2d 707, 710 (2d Cir. 1991) (citations omitted).

## DISCUSSION

The City defendants seek summary judgment on all counts, asserting that: (i) the City defendants had no prior written notice of the defect alleged to have caused Quinn's injuries, as required by law; (ii) there are no applicable exceptions to the prior written notice requirement; and (iii) in the absence of any genuine issue of material fact as to Quinn's negligence claims, Lori Ann's derivative claims must also be dismissed. The City defendants' motion for summary judgment is granted in full.

Separately, the City defendants advance a preclusion argument relating to the sufficiency of the information contained in plaintiffs' notice of claim. We address this argument in further detail below.

### A. Negligence Claim

In a diversity case, this Court will "apply state substantive law and federal procedural law." <u>Duguay v. City of New York</u>, 861 F. Supp. 2d 236, 245 (S.D.N.Y. 2012) (quoting <u>Gasperini v. Center</u> <u>for Humanities, Inc.</u>, 518 U.S. 415, 427 (1996)). "To establish a prima facie case of negligence under New York law, 'a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting

therefrom.'" <u>Duguay</u>, 861 F. Supp. 2d at 245 (quoting <u>Lerner v.</u>
<u>Fleet Bank, N.A.</u>, 459 F.3d 273, 286 (2d Cir. 2006) (citation
omitted)).

Although landowners in New York generally owe a duty of
reasonable care to maintain their property in a safe condition,
<u>Tagle v. Jakob</u>, 97 N.Y. 2d 165, 168 (2001), the New York City
Administrative Code partially shields the City from liability for
negligence claims. <u>Duguay</u>, 861 F. Supp. 2d at 246. Specifically,
pursuant to New York City Administrative Code § 7-201(c)(2),
commonly called the "Pothole Law":

> No civil action shall be maintained against the city for
> damage to property or injury to person or death sustained
> in consequence of any street, highway, bridge, wharf,
> culvert, sidewalk or crosswalk, or any part or portion
> of any of the foregoing including any encumbrances
> thereon or attachments thereto, being out of repair,
> unsafe, dangerous or obstructed, unless [i] it appears
> that written notice of the defective, unsafe, dangerous
> or obstructed condition, was actually given to the
> commissioner of transportation or any person or
> department authorized by the commissioner to receive
> such notice, or [ii] where there was previous injury to
> person or property as a result of the existence of the
> defective, unsafe, dangerous or obstructed condition,
> and written notice thereof was given to a city agency,
> or [iii] there was written acknowledgement from the city
> of the defective, unsafe, dangerous or obstructed
> condition, and there was a failure or neglect within
> fifteen days after the receipt of such notice to repair
> or remove the defect, danger or obstruction complained
> of, or the place otherwise made reasonably safe.

Once the City establishes that it lacked prior written notice of a hazard, "the burden shifts to the plaintiff to demonstrate the applicability of one of two recognized exceptions to" the § 7-201 notice requirement.  Zinz v. Empire City Subway Co., No. 13 Civ. 4415 (LGS), 2014 WL 5293603, at *5 (S.D.N.Y. Oct. 14, 2014) (quoting Yarborough v. City of New York, 10 N.Y.3d 726, 728 (2008)).  These exceptions apply only where: (i) "a 'special use' confers a special benefit upon the locality"; or (ii) the City affirmatively caused or created the dangerous condition.  Oboler v. City of New York, 8 N.Y.3d 888, 889 (2007) (citations omitted). The "affirmative negligence" exception requires a plaintiff to proffer admissible evidence that the municipality's actions "affirmatively" and "immediately resulted in the existence of a dangerous condition." Parente v. Metro Transp. Auth., No. 10 Civ. 5913 (LTS), 2012 WL 1813077, at *10 (S.D.N.Y. May 16, 2012); Yarborough, 10 N.Y.3d at 728.

## 1. Prior Written Notice

The City defendants attach to their motion more than 400 pages of records relating to the location of Quinn's accident over a period of two years, ECF Nos. 84-11-84-15, 84-17-84-18, as well as three affidavits from employees of the New York City Department of Transportation ("DOT"), ECF Nos. 84-16, 84-19, 84-20.

In the first of these affidavits, DOT paralegal Henry Williams describes the comprehensive search he conducted for DOT records, including his review of all relevant electronic and paper "permits, applications for permits, OCMC files, CARs, NOVs, NICAs, inspections, contracts, maintenance and repair orders, complaints, gangsheets [sic] for roadway work, milling and resurfacing records, and Big Apple Maps for the roadway located at 6th Avenue between West 52nd Street and West 53rd Street [and the intersection of 6th Avenue and West 53rd Street] . . . [over] a period of two years prior to and including" the date of Quinn's accident.  ECF No. 84-16 ¶¶ 3-4.  As Mr. Williams notes in his affidavit, his search returned more than 100 documents, including three maintenance and repair orders issued by DOT to address potholes that had formed in the area prior to the accident.[3]

The other two affidavits submitted by the City defendants address and explain these maintenance and repair orders, which were issued approximately two years and seven months before the accident, respectively.  ECF Nos. 84-19, 84-20.  The affidavit

---

[3] In his affidavit, Mr. Williams states that his roadway segment search returned the following records: 25 permits, 25 hardcopy permits, 25 applications for permits, 1 OCMC file, 3 CARs, 2 NOVs, 14 inspections, 1 maintenance and repair order, 1 complaint, 1 gang sheet for roadway defects, and 1 handwritten gang sheet for roadway defects.  ECF No. 84-16 ¶ 3.  He also states that his roadway intersection search returned the following records: 8 permits, 8 hardcopy permits, 8 applications for permits, 3 NOVs, 12 inspections, 2 maintenance and repair orders, 1 complaint, and 2 gang sheets for roadway defects.  Id. ¶ 4.  Mr. Williams' search also returned 4 Big Apple Maps.  Id. ¶ 5.

executed by Yelena Pasynkova, a DOT Principal Administrative Assistant in the Division of Roadway Repair and Maintenance, ECF No. 84-19 ¶¶ 1-7, discusses the August 22, 2017 and January 17, 2019 repair orders, while the affidavit executed by DOT Supervisor Highway Repairer Mohammad Hoque, ECF No. 84-20 ¶¶ 1-5, discusses the repair order dated November 13, 2017. Both Ms. Pasynkova and Mr. Hoque attest that DOT responded promptly to each reported defect, completing the requested repairs and closing each maintenance and repair order within twenty-four hours. ECF Nos. 84-19 ¶¶ 4-7, 84-20 ¶¶ 4-5.

Aside from these maintenance and repair orders, which demonstrate that any reported defects were repaired approximately seven months prior to Quinn's accident, there is no indication in any of the records submitted by the City defendants that they had written notice of a defect within the crosswalk before the accident occurred. Rather, the records and accompanying affidavits clearly reflect that the City defendants addressed and properly remediated all reported defects months — and, in some cases, years — prior to Quinn's alleged accident. Records like those submitted by the City defendants are more than sufficient to satisfy the City's burden to establish that it did not receive prior written notice of the purported defect prior to the accident. See Culbertson v. Triumph Constr. Corp., No. 159608/2019, 2023 WL 5628204, at *2-*3

(Sup. Ct. New York Cty. Aug. 31, 2023) (finding the City satisfied its prima facie burden under § 7-201 by submitting a "[DOT] affidavit and the DOT records attached thereto"); see also Webster v. City of New York, No. 19 Civ. 5638 (KPF), 2021 WL 3913556 (S.D.N.Y. Sept. 1, 2021). Plaintiffs' arguments to the contrary are both unsupported and unconvincing.

First, Plaintiffs claim that the City defendants "never laid a proper foundation for the records pursuant to the business records exception[.]" Opp. at 7. For a document to be considered a business record, it must be shown that: (i) the record was made "at or near the time by . . . someone with knowledge"; (ii) in the course "of regularly conducted [business] activity"; and (iii) that creating the record "was a regular practice of that activity." Fed. R. Evid. 803(6). The party presenting the record must also provide the certification or testimony of the custodian or another qualified witness. Id. Rule 803(6) "favors the admission of evidence rather than its exclusion if it has any probative value at all." U.S. v. Kaiser, 609 F.3d 556, 574 (2d Cir. 2010) (citation omitted). In Mr. Williams' affidavit, he attests that the records he searched were "maintained by DOT in the ordinary course of business[.]" ECF No. 84-16 ¶¶ 1-2. Further, both Mr. Hoque and Ms. Pasynkova state in their affidavits that they are familiar with the maintenance and repair orders they discuss "through the

ordinary course of [their] work."  ECF Nos. 84-19 ¶ 2, 84-20 ¶ 2.
These affidavits, executed by DOT employees to support the
admission of records maintained in the course of DOT's regularly
conducted business activities, are sufficient to establish that
the documents at issue are admissible as business records.[4]  See
Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290,
312-13 (2d Cir. 2008) (accepting sworn declaration at the summary
judgment stage to establish admissibility as business records).

Plaintiffs further misapprehend the business records doctrine
when they attempt to cast doubt on the reliability of the records
submitted by the City defendants.  First, plaintiffs argue that
"the absence of records proving that the City repaired the pothole
does not prove that the City did not repair the pothole [or] . . .
repaired it properly." Opp. at 7.  Such a proposition ignores the
very nature of business records.  "The hallmark of documents
admitted under the business records exception is that they are
trustworthy and reliable" because they were kept in the course of
a regularly conducted activity and made contemporaneously with the
events they concern.  Saks Int'l, Inc. v. M/V "Export Champion",

---

[4] Note also that "material relied on at summary judgment need not be admissible
in the form presented to the district court[.]"  Smith v. City of New York, 697
Fed. App'x 88, 89 (2d Cir. 2017).  "[S]o long as the evidence in question will
be presented in admissible form at trial," it may be considered on summary
judgment.  Id. (citing Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001))
(internal quotations omitted).

817 F.2d 1011, 1013 (2d Cir. 1987). Further, Federal Rule of Evidence 803(7) specifically excepts from the rule against hearsay the absence of a record of a regularly conducted activity where: (i) "the evidence is admitted to prove the matter did not occur or exist"; (ii) "a record was regularly kept for a matter of that kind"; and (iii) "the opponent does not show that the possible source of the information or other circumstances indicate a lack of trustworthiness." Accordingly, to the extent plaintiffs assert that the absence of a record showing a defect cannot prove that one did not exist, this approach is simply incorrect.

Finally, Rule 803(6)(e) permits the admission of business records if an opponent fails to show that the "source of the information or the method or circumstances of preparation indicate a lack of trustworthiness." While plaintiffs baldly claim that "it is important and worthwhile to question Mr. Williams and the other affiants regarding the sufficiency of their record searches, Opp. at 9, they point to no evidence or case law to support this contention, providing only vague and speculative reasons to do so. "[O]nce [a] moving party has properly shown the absence of any genuine issue as to a material fact, the motion will not be defeated merely on the basis of conjecture or surmise, [or] by reliance on conclusory statements[.]" Arias v. Apple Cutting, Inc., No. 96 Civ. 8272 (DLC) (NRB), 1998 WL 307388, at *2 (S.D.N.Y.

June 10, 1998) (citing <u>Goenaga v. March of Dimes Birth Defects Foundation</u>, 51 F.3d 14, 18 (2d Cir. 1995)).  Mere speculation by plaintiffs will not suffice to overcome the record submitted by the City defendants.

Plaintiffs also assert that the City defendants "utterly ignore[]" a declaration by expert witness Joseph Farahnik, which they claim "prov[es] that Quinn was injured due to an improperly repaired pothole."  Opp. at 7.  In this six-page declaration, Mr. Farahnik states that a "pothole[] caused [Quinn]'s accident[,]" and that this pothole was caused by the "combined effects of inadequate repair and improper partial repair . . . by the City of New York . . . which occurred prior to the accident."  ECF No. 87-2 ¶ 12.  While Mr. Farahnik claims that he "reviewed relevant documents and photographs . . . to determine the responsibilities of the City of New York[,]" he fails to attach any such documents or photographs to his declaration.  ECF No. 87-2 ¶ 4.  Crucially, although Mr. Farahnik claims that Quinn's accident was caused by an "improperly patched/resurfaced" pothole, ECF No. 87-2 ¶ 12, the fact that a previous repair may have been inadequate does not alter § 7-201's requirement that the City receive prior written notice of a pothole in order for liability to attach.  <u>See Webster</u>, 2021 WL 3913556, at *9 (declining to find written notice where plaintiffs argued the defect recurred following repairs made

approximately two months before the alleged accident) (citing Capobianco v. Mari, 708 N.Y.S. 2d 428, 428 (2d Dep't 2000) (finding the mere "allegation of a subsequent recurrence of a condition does not abrogate the need for prior written notice")). Ultimately, Mr. Farahnik's declaration, which is both unsupported and speculative, fails to raise any genuine issue of material fact.[5]

Finally, plaintiffs claim, again without basis in the record, that various records produced by the City defendants did, in fact, provide adequate written notice of the alleged defect within the crosswalk. None of these arguments is availing. Although plaintiffs argue that the Big Apple Map provided by the City defendants is "blurry[,] illegible and cannot be read[,]" Opp. at 2, n. 1, they paradoxically assert that the same Big Apple Map "shows the defect that caused Quinn's accident" and demonstrates that "the City [defendants] did have prior written notice of the defect[.]" Opp. at 10. However, as the City defendants note, the Big Apple Map identifies no relevant pothole or hazard within the crosswalk at issue.[6] Reply at 5-6. The Court's inspection of the

---

[5] Although it is irrelevant to this motion, which addresses the sufficiency of the notice to the City defendants, we also note that Mr. Farahnik's May 9, 2022 declaration, ECF No. 87-2, which alleges that a pothole caused Quinn's accident, contradicts a September 30, 2019 report by Nicholas Bellizi submitted by plaintiffs in the earlier ConEd Action, ECF No. 88-2, which clearly places responsibility on the ConEd gas cap.

[6] As shown in the map legend, a hazard within a crosswalk is identified using a square box. ECF Nos. 87-4 at 3, 88-3 at 3. There are no square boxes on the Big Apple Map. ECF Nos. 87-4 at 2, 88-3 at 2.

map has confirmed the City's position.  No reasonable juror could conclude otherwise.  Plaintiffs also claim that the maintenance and repair orders dated August 22, 2017 and January 17, 2019 — nearly two years and seven months before Quinn's accident, respectively — constitute "written acknowledgment" of a defect pursuant to § 7-201(c)(2), sufficiently demonstrating that the City defendants "knew of the hazard and had an opportunity to remedy it." Opp. at 11.  However, as plaintiffs themselves note, id., the City defendants promptly repaired the defects at issue in each complaint.  ECF Nos. 84-19 at ¶¶ 5-7, 84-20 at ¶¶ 4-5.  The written acknowledgment exception set forth in § 7-201(c)(2) applies only if there is "a written statement showing that the city agency responsible for repairing a condition had first-hand knowledge both of the existence and the dangerous nature of the condition[.]" Bruni v. City of New York, 2 N.Y.3d 319, 325 (2004). Plaintiffs fail to demonstrate that the maintenance and repair orders they cite provide any evidence that any defect or "danger[]" remained after the City completed its repairs.  Webster, 2021 WL 3913556, at *10 (finding a gang sheet identifying potholes that were addressed and repaired did not constitute a "written acknowledgment" for purposes of §7-201(c)(2)).

Finally, plaintiffs note that the City defendants summoned ConEd to appear for a hearing on November 14, 2018, approximately

seven months before Quinn's accident, because ConEd "had opened the street at 1301 6th Avenue between West 52nd Street and West 53rd Street without [a] City permit[.]"  Opp. at 11-12.  This summons did not relate to any hazard within the crosswalk at issue, instead addressing "an electric conduit . . . in temporary asphalt . . . without a valid NYC DOT permit" along the curb.  ECF No. 84-14 at 237.  Accordingly, it also fails to establish prior written notice of any defect relevant to the alleged defect at issue in Quinn's accident.

In sum, the City defendants have made a prima facie showing that they did not receive written notice of or affirmatively acknowledge any defective condition prior to Quinn's accident.  In response, plaintiffs have failed to provide any evidence establishing a genuine dispute of material fact.[7]

---

[7] Plaintiffs also assert that a ruling on summary judgment should be deferred under Federal Rule of Civil Procedure 56(d) until they are able to conduct further discovery.  Opp. at 3, 5.  However, plaintiffs have not "specified" any valid reasons why they "cannot present facts essential to justify [their] opposition" to the City defendants' motion, as required by Rule 56(d).  A "[b]are assertion that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient to justify a denial of a motion for summary judgment under" Rule 56(d).  Gene Codes Forensics, Inc. v. City of New York, 812 F. Supp. 2d 295, 304 (S.D.N.Y. 2011) (citing Lerwick v. Kelsey, 150 Fed. App'x 62, 65 (2d Cir. 2005)).  Given the voluminous record submitted by the City defendants and plaintiffs' failure to identify any genuine issue of material fact that might be resolved by deposing the affiants, plaintiffs' assertion is wholly without support.

## 2. Applicable Exceptions

Plaintiffs claim that, even if there was no written notice to the City defendants regarding the defect, "the instant case falls under an exception to the written notice requirement."  Opp. at 12.  We disagree.

In the absence of reliance by plaintiffs on the special use exception, only the affirmative negligence exception remains.  To support their argument that the affirmative negligence exception must apply, plaintiffs assert only that "[t]he City worked at the same location several times[,]" directing the Court's attention to the maintenance and repair orders dated August 22, 2017 — almost two years before Quinn's accident — and January 17, 2019 — almost seven months before the accident.[8]  Opp. at 13.  Plaintiffs provide no evidence that the repairs performed on either date resulted in the existence of a dangerous condition.  Nor do plaintiffs explain how any action taken by the City defendants in connection with either maintenance and repair order could have "immediately" resulted in the existence of a hazardous condition in the crosswalk at the time of Quinn's accident, which occurred nearly seven months

---

[8] Plaintiffs also point to Street Opening Permits granted to ConEd on December 12-13, 2018, January 2, 2019, January 23, 2019, February 12, 2019, April 2, 2019, and June 6, 2019.  Opp. at 13; ECF No. 84-17 at 21, 27, 32, 38, and 44. However, the mere existence of these permits, issued to an independent entity, cannot provide a basis for asserting that the City defendants caused or created the condition at issue.

after the final repair at that location.  See Webster, 2021 WL 3913556, at *12 (finding repair of a pothole approximately two months before a trip and fall insufficient for purposes of the affirmative negligence exception); Zinz, 2014 WL 5293603, at *5-*6 (finding repair of a pothole approximately three months before a trip and fall insufficient for purposes of the affirmative negligence exception).

In summary, because the City defendants have advanced a fulsome prima facie showing that they received no written notice of a defective condition prior to Quinn's accident, as required by § 7-201, and plaintiffs have failed to establish that any conduct by the City defendants constituted an affirmative act of negligence sufficient to satisfy any exception to this rule, this Court finds no question as to whether the City defendants were negligent. Thus, the City defendants have shown that there is no genuine dispute as to any material fact and that they are entitled to summary judgment as a matter of law.

**B.  Derivative Claims**

Having granted the City defendants' motion for summary judgment on Quinn's negligence claim, it follows that plaintiff Lori Ann's derivative claim must be dismissed.

**C.    Plaintiffs' Notice of Claim**

The City defendants also argue that Quinn should be precluded from arguing that his injury was caused by a pothole, for which the City could be responsible, because the notice of claim should be read as placing the blame on a ConEd gas utility box.  Reply at 1.  Specifically, the City defendants cite the following language from the notice of claim: "[T]he defect consists of an uneven, raised, depressed, mis-leveled gas utility box."  Id. (quoting ECF No. 84-5 at 2-3).

While we do not dispute the potential significance of this language, as well as Quinn's testimony at the 50-H hearing,[9] we do not read the notice of claim as a whole as requiring the preclusion sought by the City.  To be clear, the potential significance stems from the fact that the precise location of the accident impacts whether the City or ConEd has potential liability.  See Quinn, 2022 WL 874852, at *3-*4 (citing 34 RCNY § 2-07(b) ("[O]wners of covers or gratings on a street are responsible for monitoring the condition of the covers and gratings and the area extending 12 inches outward from the perimeter of the hardware[.]")).  In light

---

[9] As plaintiffs note, Quinn testified to the following at the 50-H hearing:

> Q. What was the distance between the pothole and the utility box?
> A. It was up against it, maybe – pretty much up against the lip of the utility box.

Opp. at 15 (quoting ECF No. 84-10 at 26).

of our holding on the City defendants' motion for summary judgment, we need not reach any other issue related to liability.

**CONCLUSION**

For the reasons stated above, the City defendants' motion for summary judgment is granted in its entirety and plaintiffs' complaint is dismissed.  Further, because there is no longer a predicate for any of the City defendants' claims against ConEd, ECF No. 21, which have been stayed pending the outcome of the City defendants' motion for summary judgment, ECF No. 76, those claims are also dismissed.  The Clerk of the Court is respectfully directed to terminate all pending motions and enter judgment for the defendant.


**SO ORDERED.**


Dated:    September 26, 2024
          New York, New York

          NAOMI REICE BUCHWALD
          UNITED STATES DISTRICT JUDGE